Randy Marcus, etc. et al. versus Forest Pharmaceuticals, Inc. et al. If any of the people standing in the rear are members of the bar, you may take seats in front of the bar. Mr. Wisner, proceed. I'd ask that any remaining two minutes of my time be reserved for rebuttal. You may have it. May it please the Court. The first question, what is the fraud? Forest would have us believe that the only thing that they did wrong was sell a drug in California that was FDA approved. And if you characterize the fraudulent conduct that way, well, they didn't do anything wrong. The FDA approved the drug, they sold it, and that's that. They had express authorization to engage in the quote-unquote fraudulent conduct. The problem with that analysis is that it fundamentally misapprehends what consumer fraud is. It also misapprehends what the consumer fraud in this case is. In California, there is a legal obligation of a seller of a product to disclose all material efficacy information of a drug to consumers. That is something that is created because the drug manufacturer here, Forest, has specific knowledge and information about the drug that consumers simply do not have. They, when they enter California's jurisdiction, are required to disclose this information to consumers. And this isn't some victimless crime. We're not talking about some incidental fraud. We're talking about a misrepresentation and an omission that goes to the heart of what this product is about. But as it's described in your complaint, the omission is an omission from the label on the drug. Well, by definition, an omission can be an omission in all aspects of the promotion and advertising of the product. But that's not the way your complaint describes it. Your complaint repeatedly refers to the label, refers to no other piece of literature or promotional material, just the label. And an omission from the label, it seems to me, would fall squarely within the California Safe Harbor Doctrine, the way the California Supreme Court has enunciated it. Well, that would be the case. Well, first of all, Your Honor, I disagree respectfully on the notion of the complaint because it doesn't specify all the different ways that Forest provided. It doesn't specify any ways. It just talks about the label being misleading because of the omissions of these materials and the nondisclosures of the things that you think should have been disclosed. I do believe the complaint does contain allegations, particularly in the class action section, dealing specifically with the ways that all the advertisements and promotions that were done by Forest failed to contain the information. It didn't mention any other advertisements. Well, the complaint will speak for itself, but let's go ahead with your argument. But I think the second issue is the one that's sort of at the meat here, the core of the issue. And that is, does that squarely fall within the Safe Harbor vision enunciated by the California Supreme Court? What specific statement do you say that Forest should have added to its description of the drug? Sure. I believe that the drug label, or whether it be a Dear Doctor letter or its advertising or promotion, should have disclosed how Lexarbo performed compared to placebo. Okay. And then why is that not preempted as a result of the FDA approval? Well, I think there's two issues here, right? So the first issue is preemption and the second issue is the California Safe Harbor. If we're talking about the California Safe Harbor... I'm asking about preemption. Why isn't it preempted? Well, it's not preempted because under Levine, the drug manufacturer bears the responsibility for the content of the drug label at all times. They have the ability under the CBE regulation, the Changes Being Effect regulation, to make changes to the label that reflect the truth and accuracy of both safety and efficacy. Okay. And that regulation is limited to newly acquired information. Yes. And in Levine, the Supreme Court explained that newly acquired information can simply be a re-evaluation. So Forrest could have done a meta-analysis of all the different clinical trials to compare how the drug performed. Okay. But what specific newly acquired information was... What specific information on efficacy was acquired post-FDA approval that was then not added to the disclosure by use of the 30-day notice provision? Well, the problem with that, Your Honor, is I haven't been able to do any discovery in this case. Your Honor, you're pleading, and as I understand it, the CBE only applies when there's newly acquired information. Yes, but... So my question is, what was the newly acquired information that you're alleging was not added to the label? Well, the CBE doesn't just require newly acquired information. I think that that's the part with that interpretation of the CBE. Because... Are we talking about 314C63D? Yes. Okay, and that specifically says that you may change the label with 30 days' notice to the FDA based on newly acquired information. In Levine, the Supreme Court interpreted what that statute means. And it doesn't just mean I literally discovered a new piece of information. It means I should have gone and done a re-evaluation of the data that I presently had. It's a normative statement. It's not simply a factual determination of whether or not new information was acquired. But if that were the case, Your Honor, then this shouldn't be the subject of a motion to dismiss. That is a factual question that would require some discovery. We never got there. So you're basing your CBE argument on the notion that they had an ongoing duty to continue to re-evaluate, and had they done that re-evaluation, they would have then had some information that they could and should have put on the label. Yes. And as we do describe in the complaint, there were numerous medical journal publications that were published after Lexapro's approval, criticizing the efficacy, criticizing the way that those trials were done. So arguably, you could argue that Forrest, having obtained these new publications, critical of their efficacy of the drug at that point, they were under an obligation to re-evaluate. That is information that is alleged in the complaint. But now are you referring to paragraphs 21 and 54 of your complaint? Is that what you're relying on? I don't have them offhand, Your Honor, but I believe there's a section in the complaint. Give me a second. I can find it, but I'd rather not use up my last minute here filtering through the complaint. Send us a letter. Okay. I will. But, Judge, I wanted to respond to the safe harbor question because we got kind of sidetracked here for a second. And under California's safe harbor provision, it requires an express authorization by statute. Not an implication. Not, oh, it was approved, so therefore you have carte blanche to engage in any promotion or activity you want because you have FDA approval. It has to be expressed because the consumer fraud laws in California are designed to be liberally interpreted. They're designed to reach out and touch conduct that might go beyond what the FDA approval does. Because when the FDA approves a drug, it does not make any determination about whether or not that label or its marketing efforts is in compliance with state law. It is solely restricted and circumscribed by whether or not that drug label complies with federal regulation. And under Levine, what the Supreme Court has told us is that federal regulation sets the floor and that states are permitted and, in fact, encouraged to enact stronger and more stringent regulations to ensure that the drugs are, in fact, safe and effective. You've reserved two minutes. Good morning, Your Honors. Edwin Shallard on behalf of the forest defendants. The district court correctly held that California's safe harbor bars a claim that the label for Lexapro is false or misleading. The safe harbor protects conduct that is permitted or required by another law. Here, federal law not only permitted but required for us to include an FDA-approved label that states that Lexapro has efficacy compared to placebo in treating major depressive disorder in adolescents. It required you to do that, okay, but it didn't unless preemption applies here, it didn't prohibit you from adding more information about efficacy, particularly if the information was acquired after drug approval. Well, there's several things, Your Honor. First, we could not alter the label for several reasons. The CBE regulation would not have allowed for us to alter the label unilaterally. First, it's a change in the clinical study section of the label, and that's you're not allowed to do unilaterally. Secondly, it's not based on any new acquired information. Indeed, the plaintiffs are essentially taking the exact same studies that the FDA had, and they're saying that they've got a totally different reason for that. Well, aren't they saying that the four-year study in paragraph 21 of the complaint, the four-year study came out after approval, and they're also saying there's a publication in the Journal of Canadian Academy of Child and Adolescent Psychiatry that came out after approval. That's what's called a meta-analysis. That would not qualify for the CBE regulation, Your Honor. What says that wouldn't qualify? How would we define that as a matter of law? We cite in our brief, Your Honor, the citations to the Code of Federal Regulation that explains that meta-analysis would not be an additional study. But, Your Honor, just to be clear, the facts in Wyeth are entirely different. In Wyeth, the company could have complied with the state disclosure laws that required a change in the FDA-approved label. That FDA CBE regulation permits a manufacturer to make certain changes without prior authorization from the FDA, including additional warnings about safety based on newly acquired information. That is not this case, Your Honor. The CBE would not have allowed for us to add information that contradicted the FDA's previous findings of efficacy. That's what they want here, Your Honor. They want to contradict it. And if you contrast that with the two subsequent Supreme Court cases, PLEVA and Mutual Pharmaceutical, in both of those cases the court held that because federal regulations would not have allowed the manufacturer to unilaterally change the drugs label, a state law claim was preempted. Preemption was satisfied where defendants were not allowed to make a demanded change without FDA approval. And that applies here, too, Your Honor. Let me ask you, don't you have to win on preemption or else you'll automatically lose on the safe harbor? No, Your Honor. Let's assume there's no preemption here, okay? If we assume there's no preemption, doesn't it follow what Congress and the FDA have said is you should do this label plus whatever in addition to that the California legislature or juries should decide to do, and we're not going to preempt them from doing that. So how would the safe harbor become applicable? Because the safe harbor does not allow a state to condemn conduct that federal law permits. That's the exact formulation of the safe harbor. But they're not condemning it. They're condemning the FDA-approved label. This complaint is a frontal assault on the FDA-approved label. It says that the Lexapro, any benefit was explained by placebo, that the label had misleading information about clinical trial data, that they had read the label and relied on it. The issue in the case was, quote, whether the drug label was misleading, and it sought to impermanently join force from using the current label. That's a frontal assault on the FDA approval. The FDA has said to force. We're allowed to do that. Mr. Shalit, if it's a frontal assault on the label, you're going to win on preemption. But if it's not a frontal assault, if it's just adding information that is not preempted, then how do you win then? Because it's not adding information. It would change the substance of the label. The FDA has determined not only that that's the appropriate label, but that the label is not false or misleading. Their claim is that the label is false or misleading, and they say that we have to rewrite the label in order to make it not false or misleading. That's why it's protected by the safe harbor. The FDA has already determined it's not safe or misleading. They did that. Were this court to look at preemption as the narrower ground of decision? Is there any reason why this court could not or should not view this as a preemption issue? There's no reason at all. It's an alternative ground for affirmance. I think the only reason the district court followed the approach it did is that normally, because preemption is a constitutional issue, courts normally decide matters on a statutory basis. But let me also point out, Your Honor, that if anything, Wyeth, which the plaintiffs rely on heavily, is not, as you know, a safe harbor case. It's an impossibility preemption case, which the Supreme Court said was a demanding standard. Forrest meets that preemption standard too, but it's different from a safe harbor. Rather than having it shown it would be impossible to comply with both federal and state requirements, a safe harbor nearly requires a showing that federal law permits certain conduct. So in that sense, the federal floor is indeed a ceiling of state law, and that's why the safe harbor does apply here. There's where you lose me. I don't understand why when one sovereign in California says we're going to create a safe harbor when the legislature has permitted something, I don't see where it follows that if the federal government has permitted something, that California courts, in interpreting the unfair competition, are prohibited from adding on to that and saying you've got to do more unless they're preempted. In other words, you've got two sovereigns here, not one. You're trying to apply the safe harbor provision in California based on what another sovereign has done without a preemption analysis. That's where you're losing me. Well, because the safe harbor under California law applies wherever a law has permitted something, whether it's federal law or state law. California has never said the safe harbor only applies if we say it's okay. If federal law permits something, the safe harbor should apply for the same reason. But federal law permits thousands of things that states can add on to. Again, Your Honor, they're not talking about adding on. What they're talking about here is contradicting. We have the FDA approval based on substantial evidence, a statutorily defined term, two double-blind randomized controlled trials. The FDA determined that the drug was effective versus placebo. The plaintiffs say, no, we want you to contradict that. That's why it's certainly protected by the safe harbor. Indeed, Your Honor, Congress has granted public health and safety, the notion of looking at that, to the FDA. The FDA has authority to grant marketing approval and make those efficacy determinations. If allowing state law to supplant the FDAs, that could, if anything, endanger the public. Imagine if California and other states had their own standards for efficacy determinations and their own determination of clinical data. Drug labels that differed by different states would be confusing to physicians and patients. Indeed, if Forrest had to make the disclosures that plaintiffs want in California, if we did that, they might well have to stop sales in California because, Your Honor, if they'd be facing a claim in the other 49 states that pointing to the disclosures in California and saying, gee, those are inconsistent, you must be defrauding us in the other 49 states. That's why what they want, Your Honor, is a wholesale rewriting of that label. Not as in Wyeth, which was not something that contradicted label. It was something that was based on newly acquired information after the label had been approved in which it added additional safety warnings that otherwise had not been known before. This is a completely different case, Your Honor. This is a statement about whether the drug is or is not effective versus placebo. And that the FDA has already determined. And, again, the safe harbor cannot be used to condemn conduct that law permits. Here, the federal law permits Forrest to say exactly what was on the label. And to go to Judge Shelley's question, Rule 9B applies to the pleading of consumer protection claims. The complaint has no allegations about any misstatements other than as to the label and certainly no particularized allegations, nor are there any allegations of any marketing that's inconsistent with the label. And, for instance, dear doctor letters in the plea of a case the Supreme Court pointed out, the FDA's view, the dear doctor letters have to be consistent with the FDA label. So all the marketing, there's no allegation that Forrest made any statements that were inconsistent with that label. I would note, Your Honor, that nothing in the district court's decision insulates a pharmaceutical company from liability for false advertising that contradicts an FDA label or for promoting a drug for unapproved uses. But here, where Congress has given the FDA authority to make determinations about efficacy and where it has approved the label, we think not only the safe harbor applies, but in addition preemption applies because it would have been impossible for Forrest to comply with plaintiff's conception of the disclosure that required and also comply with federal law because they couldn't have made unilateral changes in the label under the CBE regulation, which is in direct contrast to Wyeth. Have I answered Your Honor's question about the safe harbor? Because we think the district court got this exactly right. We do believe it addresses a situation where, whether it's federal or state law, permits and, indeed, we're required by law to have that label on the product. And they're trying to rewrite the law. It's not just additional information. They're saying that what was stated in the law is inaccurate, even though the FDA said it wasn't false or misleading. Thank you. I really have three quick points. The first one is something that was addressed at the beginning of the argument, and that was this isn't just about the label. It can't be. The idea that a drug company's only conduct can be limited to what's on the label, I think, is a misnomer and an incorrect interpretation of the allegations that we've made. I think you've misunderstood. The point was your complaint talks about the label. It does not talk about marketing in terms different than the label. This is not about what the law could do. This is about the case before us. Indeed, the complaint asks for an injunction against the use of the label. In the state of California, because it is not complying with California law. What's your second point? This is an important point that I think has been expressed by Forrest over and over again. We are not trying to contradict the information on the label. A half-truth is sometimes the greatest lie. We are not saying that they have to go out and tell people this drug does not work, because that's not what we're trying to say. Or even say that this drug didn't meet the substantial efficacy requirements of federal regulation. We are simply having them say, listen, this drug has been shown to be effective in a clinical trial by one point. The difference between this and a placebo is clinically insignificant, meaning a patient, a doctor, wouldn't be able to tell the difference. But that by one point, that was known to the FDA at the time of the approval. Absolutely. So I think you're now back to saying what you really want to have done here is have the label written differently than the FDA wanted it to be written, based on information that existed at the time of the FDA approval. Well, the problem with that position is that it assumes that the label's content of responsibility is the FDA, and it's not. It's the manufacturers. Your third point? The issue of preemption obviously seems to be very important to this court, and I would request an opportunity to do a supplemental brief on it. It is a complicated issue that I have personally litigated numerous times and did before the district court, and it was ignored. But you had the opportunity to brief it and didn't use it. I mean, that's an alternative ground for affirmance. It's been in the case since the moment you filed the notice of appeal. They briefed it in their red brief. In fact, you did respond to it. I did respond and asked if this is going to be an issue that's going to be decided. I don't get two responses. Fair enough. Well, you've made the argument. Thank you.